TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00603-CV






Hays County Appraisal District, Appellant



v.



Southwest Texas State University and Southwest Texas State


University Support Foundation, Appellees






FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT


NO. 96-0755, HONORABLE BILL BENDER, JUDGE PRESIDING 






 Southwest Texas State University ("University") and Southwest Texas State
University Support Foundation ("Foundation"), appellees, sued Hays County Appraisal District
("Appraisal District"), appellant, seeking to establish that certain property owned by the
Foundation was exempt from taxation for the years 1992 through 1996. Following a trial to the
court, the district court rendered judgment that the property was entitled to a partial exemption
from property taxation. On appeal, the Appraisal District complains that the trial court erred in
granting a partial exemption for the tax years in question. We will reverse the trial court's
judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 In June 1991, the Foundation, a nonprofit Texas corporation, purchased property
commonly known as the Fire Station Building in San Marcos, Texas, along with a nearby parking
lot. The Fire Station Building has three stories. The first floor had office space and common
areas such as the entrance, waiting room, conference room, copy room, kitchen, and bathrooms. 
The second floor contained a recording studio, offices, and rehearsal areas. The third floor
consisted of men's and women's locker room facilities. The parking lot is one block away and
has fifty-one parking spaces. The properties were acquired by the Foundation in anticipation of
the University's developing a new academic program in "sound recording technology."

 On December 1, 1992, the entire Fire Station Building and parking lot were leased
by the Foundation to the University. The lease was for an initial three-year term, with an
automatic extension for a ten-and-one-half-year term. Under the terms of the lease, the University
was made liable for any taxes assessed against the property and was given the right to sublet the
premises. The University subleased the first floor offices to local attorneys, who operated their
private practices out of the offices. The recording studio on the second floor was operated
commercially as well as in conjunction with the University's sound recording technology program. 
Most of the parking lot was also subleased to commercial tenants for a monthly fee.

 The University and the Foundation filed a protest with the appraisal review board
of the Appraisal District requesting exemption status for the building and parking lot. The review
board denied the exemption. Appellees filed an appeal of the review board's decision to the Hays
County district court. See Tex. Tax Code § 42.06 (West 1992). The district court ruled that the
University and Foundation were entitled to an eighty percent exemption on the building and a one-third exemption on the parking lot because roughly eighty percent of the building and one-third
of the parking lot were being used for the benefit of the University. The Appraisal District
perfected this appeal.

DISCUSSION

 In point of error one, the Appraisal District argues that the trial court erred in
concluding that the building and parking lot were entitled to any exemption because each property
was privately owned and was leased for compensation to one or more private businesses to be used
for purposes not related to the performance of duties and functions of the University. A trial
court's conclusions of law are reviewed de novo. University of Texas Law Sch. v. Texas Legal
Foundation, 958 S.W.2d 479, 481 (Tex. App.--Austin 1997, no pet.).

 All real property in this state is taxable unless exempt as required or permitted by
the Texas Constitution. Tex. Const. art. VIII, § 1(b). Statutes creating tax exemptions are to be
construed strictly in favor of taxation. See Hilltop Village, Inc. v. Kerrville Ind. Sch. Dist., 426
S.W.2d 943, 948 (Tex. 1968); Texas Util. Elec. Co. v. Sharp, 962 S.W.2d 723, 726 (Tex.
App.--Austin 1998, pet. denied). Two constitutional provisions are identified as sources for the
exemption here: article VIII, section 2 and article XI, section 9.


I. Article VIII, Section 2

 "[T]he legislature may, by general laws, exempt from taxation public property used
for public purposes." Tex. Const. art. VIII, § 2(a). (1) Because this provision only applies to
"public property," we will first determine whether the properties at issue here constitute public
property. See Leander Ind. Sch. Dist. v. Cedar Park Water Supply Corp., 479 S.W.2d 908, 912
(Tex. 1972) (article VIII, section 2 authorizes legislature to exempt only publicly owned property).

 The Texas Supreme Court has concluded that, for tax-exemption purposes, public
ownership must grow out of the facts; it is a legal status, based on the facts, that may not be
created or conferred by mere legislative declaration. Texas Turnpike Co. v. Dallas County, 271
S.W.2d 400, 402 (Tex. 1954). (2) In Texas Turnpike, the petitioners were chartered as private
corporations for the purpose of building, acquiring, owning, and maintaining toll roads within the
State of Texas. 271 S.W.2d at 401. Petitioners contended that various statutes, considered with
the corporations' bylaws and certain escrow agreements, had the effect of placing taxable title to
their property in the state. Id. The court noted that petitioners had conveyed legal title to the state
in escrow, with deeds to be delivered upon certain conditions, some of which might never occur
or exist. Id. at 402. The burden of taxation was held to rest upon the equitable title. (3)
 Id. The
court emphasized that, under the facts of that case, the conditions for compelling conveyance of
legal title were not within the power of the state as grantee, but depended entirely on performance
by petitioners. Id. The conditions remained merely possibilities, and as long as the state's interest
in the property was purely contingent, equitable title and taxable ownership were in the petitioners
rather than the state. Id.

 In the present case, the property is owned by the Foundation, which is not a
government entity but a private, nonprofit Texas corporation. Although the foundation is the
mortgagor and makes the mortgage payments, appellees assert that the Foundation will pass title
to the property to the University upon full payment of the mortgage. But the only agreement
between the Foundation and the University in the record is the lease agreement, which is silent on
the issue of transfer of title. At a meeting of the trustees of the Foundation on July 15, 1996, the
trustees approved a resolution of intent stating that the Foundation "reaffirms its original intent
and expresses again its present intent to donate the Fire Station Studio property to Southwest Texas
State University when the Foundation completes paying the note used to acquire the property." 
Appellees present no authority, however, under which such a resolution of intent establishes a
legally enforceable obligation to transfer title. It is not enough that the Foundation currently
intends to one day transfer title to the University. As long as the University's interest in the
property is contingent, taxable ownership is in the Foundation rather than the University.

 Appellees cite Texas Department of Corrections v. Anderson County, 834 S.W.2d
130 (Tex. App.--Tyler 1992, writ denied), as support for their argument. In that case, however,
it was undisputed that the state would acquire full legal title from the private nonprofit
organization involved when all of its "lease" payments were made, and that the state would be able
to compel delivery of legal title at that time. Id. at 131. Thus, the state's interest in the property
was similar to the "equitable right"--as distinguished from equitable title--that arises from a
contract for deed. See Johnson v. Wood, 157 S.W.2d 146, 148 (Tex. 1941), and Graves v. Diehl,
958 S.W.2d 468, 471-72 (Tex. App.--Houston [14th Dist.] 1997, no pet.). Whether the proper
standard for determination of public ownership is "equitable title" or "equitable right," however,
the University in the present case meets neither. The payment of the mortgage depends entirely
on performance by the Foundation, and even if the mortgage were eventually paid off, there is no
basis presented by which the University could compel the Foundation to deliver title.

 Appellees also assert that the building and parking lot are public property because
section 11.11 of the Tax Code, which is entitled "Public Property," discusses property held or
maintained for the benefit of a university, thereby implying that the legislature considers this type
of property to be public. However, the heading of a title, chapter, subchapter, or section does not
limit or expand the meaning of a statute. See Tex. Gov't Code Ann. § 311.024 (West 1988). 
Status as publicly owned property is determined by the facts surrounding the property ownership,
not implications of statutory headings. See Texas Turnpike , 271 S.W.2d at 402. We conclude
that the property here is not public property. Accordingly, appellees may not rely on the
exemption authorized by article VIII, section 2 of the Texas Constitution. (4)


II. Article XI, Section 9

 Another potential source for the claimed exemption is article XI, section 9, which
states: "The property of counties, cities and towns, owned and held only for public purposes, .
. . and all other property devoted exclusively to the use and benefit of the public shall be exempt
from forced sale and from taxation . . . ." Tex. Const. art. XI, § 9. The Texas Supreme Court
has held that this provision extends to property held by government agencies. See Satterlee v. Gulf
Coast Waste Disposal Auth., 576 S.W.2d 773, 779 (Tex. 1978); Lower Colorado River Auth. v.
Chemical Bank & Trust Co., 190 S.W.2d 48, 51 (Tex. 1945). However, appellees point to no
case that extends the exemption created in article XI, section 9 to property that is not publicly
owned. See Central Appraisal Dist. v. Pecan Valley Facilities, Inc., 704 S.W.2d 86, 89 (Tex.
App.--Eastland 1985, writ ref'd n.r.e.) (private nonprofit Texas corporation not entitled to
exemption under article XI, section 9). We decline to extend the exemption of this article to
nonpublic property. See Leander Ind. Sch. Dist., 479 S.W.2d at 912-13 ("the framers of the
Constitution provided in Art. VIII, Sec. 2, that the Legislature might exempt public property used
for public purposes. . . . [T]hey provided in Art. XI, Sec. 9, that all such property would be
automatically exempt from taxation . . . .").

 Moreover, by the phrases "held only for public purposes" and "devoted exclusively
to the use and benefit of the public," article XI, section 9 requires that the public use of the
property be exclusive. Governmental receipt and use of proceeds arising from commercial usage
of the property does not, under article XI, section 9, qualify the use of the property itself as
public. See City of Beaumont v. Fertitta, 415 S.W.2d 902, 908 (Tex. 1967). Here the trial court
found--and no party challenges--that approximately twenty percent of the building and two-thirds
of the parking lot were leased for activities unrelated to the functions of the University during the
relevant period. (5) Thus, because the property was not held only for public purposes, nor devoted
exclusively to the use and benefit of the public, appellees are precluded from relying on article XI,
section 9 as the basis for tax exemption. See Satterlee, 576 S.W.2d at 779; Pecan Valley, 704
S.W.2d at 89-90.

 Finally, appellees argue that, because eighty percent of the building was used for
public purposes, the trial court was authorized to allow a partial exemption. They point to
Highland Church of Christ v. Powell, 644 S.W.2d 177 (Tex. App.--Eastland 1982, writ ref'd
n.r.e.), as support for this proposition. In Highland Church, the court allowed an exemption for
the thirty-five percent of the building that the jury found to be used as an "actual place of religious
worship." Id. at 182. The "place of worship" exemption, however, is not based on article XI,
section 9 of the Texas Constitution (which requires exclusive public use), but on Tax Code section
11.20 as authorized by article VIII, section 2 (which does not require exclusive public use). We
therefore reject the procedure of subdividing property to determine whether part of the property's
use is exclusive for the purposes of article XI, section 9 of the Texas Constitution. We sustain
point of error one. (6)

CONCLUSION

 Because we conclude that the Fire Station Building and parking lot are not public
property and are not dedicated exclusively for public use, neither article VIII, section 2 nor article
XI, section 9 provides for the exemption appellees seek. We reverse the trial court's judgment
and render judgment denying appellees any property-tax exemption for the Fire Station Building
and parking lot for the years 1992-1996.



 

 J. Woodfin Jones, Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Reversed and Rendered

Filed: July 16, 1998

Publish

1. Under authority of this provision, the legislature enacted an exemption for "property that
is held or dedicated for the support, maintenance, or benefit of an institution of higher education
. . . .but is not rented or leased for compensation to a private business enterprise to be used by
it for a purpose not related to the performance of the duties and function of the state or
institution."  Tex. Tax Code Ann. § 11.11(e) (West 1992).
2. Although Texas Turnpike arose under article XI, section 9 of the Texas Constitution, the
court's discussion of public ownership seems to us equally applicable to article VIII, section 2.
3. It has been held that "equitable title" is such title as will support an action of trespass to try
title and arises when, for example, a contract for the purchase of property has been fully
performed by the purchaser. See Johnson v. Wood, 157 S.W.2d 146, 148 (Tex. 1941); Graves
v. Diehl, 958 S.W.2d 468, 471-72 (Tex. App.--Houston [14th Dist.] 1997, no pet.).

4. Appellees also identify chapter 2165 of the Texas Government Code as a basis for not
requiring exclusive public use of the property. See Tex. Gov't Code Ann. § 2165.203 (West
1998). That provision, however, applies only to state-owned buildings. Id. § 2165.202. Because
we have concluded the property here is not owned by the state, chapter 2165 does not apply.
5. The Appraisal District actually asserts that the evidence at trial demonstrates a higher
percentage of non-public use in 1992, but that difference is not material to our conclusion.
6. In its second issue presented for review, the Appraisal District argues that the trial court
erred in holding that the Fire Station Building and the parking lot were entitled to any exemption
prior to December 1, 1992, as there is no evidence to support such finding or, in the alternative,
insufficient evidence to support such a finding because the University's use prior to December 1,
1992, was minimal. Because we conclude that the Foundation is not entitled to an exemption for
any of the years sought, we need not address this second issue.


elying on article XI,
section 9 as the basis for tax exemption. See Satterlee, 576 S.W.2d at 779; Pecan Valley, 704
S.W.2d at 89-90.

 Finally, appellees argue that, because eighty percent of the building was used for
public purposes, the trial court was authorized to allow a partial exemption. They point to
Highland Church of Christ v. Powell, 644 S.W.2d 177 (Tex. App.--Eastland 1982, writ ref'd
n.r.e.), as support for this proposition. In Highland Church, the court allowed an exemption for
the thirty-five percent of the building that the jury found to be used as an "actual place of religious
worship." Id. at 182. The "place of worship" exemption, however, is not based on article XI,
section 9 of the